IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:09-CV-354

| | | |
|---|---|---|
| JOHNNY DOUGLAS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | ORDER |
| v. | ) | |
| | ) | |
| READY MIXED CONCRETE CO., | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the Court upon motion by Plaintiff Johnny Douglas to compel production of documents and upon motion by Defendant Ready Mixed Concrete Co. for summary judgment against Plaintiff Johnny Douglas's claims of "wrongful termination" and "employee discrimination" on the basis of a disability in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 121010 et seq..[1] The motion have been fully briefed and are therefore ripe for ruling. For the following reasons, Plaintiff's motion to compel is DENIED and Defendants' motion for summary judgment is GRANTED.

STATEMENT OF THE CASE

On July 27, 2009, Plaintiff Johnny Douglas ("Douglas"), proceeding *pro se*, brought this

---

[1] Plaintiff also purports to assert a claim for "Possible Insurance Fraud." Compl. ¶ 4 [DE-1]. Because there are no specific factual allegations in the Complaint related to this claim, the Plaintiff has supplied no legal basis for it, and the parties have not briefed the issue, this claim will be dismissed pursuant to Fed. R. Civ. P. 8(a)(2) (requiring that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief").

action against Defendant Ready Mixed Concrete Co. ("Ready Mixed"). Douglas alleges "wrongful termination" and "employee discrimination" in violation of the ADA. Compl. ¶ 4 [DE- 1].[2]

On September 4, 2009, Ready Mixed answered the complaint denying liability and asserting various defenses [DE-3].

On June 1, 2010, Ready Mixed filed a motion for summary judgment [DE-16] as to Plaintiff's claims. Douglass filed a response [DE-21] in opposition to Ready Mixed's motion. Ready Mixed filed its reply [DE-22] on July 23, 2010.

## STATEMENT OF FACTS

Ready Mixed Production Manager Ted Dover hired Plaintiff to work as a mixer truck driver on April 5, 2007. Pl's Dep. at 21, 26.[3] Plaintiff worked at the Company's Spring Lake facility until his termination on March 5, 2008. Compl. ¶ 5; Pl's Dep. 31. Plaintiff previously worked for a predecessor company of Ready Mixed as a mixer truck driver until he was terminated after failing a random drug test. Pl's Dep. 16-18. This lawsuit arises out of his most recent employment with the Company. Compl. ¶¶ 8-9.

As a mixer truck driver, Plaintiff's duties consisted of operating a concrete mixer truck to deliver concrete ordered by customers and performing cleaning and minor maintenance on the truck assigned to him. Dover Decl. ¶ 3. [DE-17-4]. To meet customer needs, mixer truck drivers

---

[2]Plaintiff's complaint [DE-1] is of a "fill-in-the blank" format typically used by *pro se* plaintiffs alleging employment discrimination claim arising under Title VII. The form complaint contains several type-written "boilerplate" allegations that this suit arises under Title VII. Plaintiff's own handwritten allegations, make clear, however, that he makes no Title VII claims. Moreover, no party has briefed Title VII issues, nor do any such allegations appear in the discovery that has been provided to the court.

[3]All cites to Plaintiff's deposition testimony contained in this Order refer to his March 31, 2010 deposition testimony.

like the Plaintiff must deliver concrete in a timely manner and must also stay at the customer's location until the concrete load has been poured. Id. at ¶¶ 3, 6.

Mixer truck drivers typically take turns making deliveries of concrete to customers. Id at ¶ 5. The timing of delivery runs is based upon customer needs and demands. Id. at ¶ 5. Drivers' work schedules and delivery times vary on a day-to-day basis depending upon customer needs and demands. Id. at ¶ 5. When there are no concrete deliveries to be made, drivers are expected to assist with general plant maintenance, clean building and grounds areas, load concrete aggregate bins through the use of a loader, and perform other tasks essential to the operation of the concrete facility. Id. at ¶ 7.

Plaintiff testified that at the time he was hired he had a 50-pound lifting restriction but this restriction did not prevent him from performing the duties of a mixer driver. Pl's Dep. 23 [DE-17-2]. Plaintiff further testified that at all times during his employment he was able to perform his job duties and did not recall receiving any work restrictions from his doctors or requesting any work restrictions from his supervisors. Pl's Dep. 44-46; 85-86, 95, 105-06.

Like all new employees at Ready Mixed, Plaintiff was placed on a probationary period for the first 90 days of his employment. Dover Decl. ¶ 10; Pl's Dep. 24. On May 24, 2007, approximately two months after starting work, Plaintiff was involved in a non-work related automobile accident while driving his personal automobile. Pl's Dep. 32. Following this accident, Plaintiff accrued multiple absences related to a back injury he sustained in the automobile accident and due to other personal reasons. Dover Decl. ¶¶ 10-11. During his first three months with Ready Mixed, Company records show that Plaintiff accrued one unexcused and two excused absences. Dover Decl. Ex. B. [DE-17-4-11]. Plaintiff also had performance issues, including customer complaints. (Dover Decl. ¶¶ 4, 10 [DE-17-4-9]. Many of these

customer complaints were related to Plaintiff's inability to get concrete to the right consistency upon arrival at a customer's jobsite. Dover Decl. ¶ 10. At the end of this 90-day period, Plaintiff's probationary period was extended for an additional 90 days due to his job performance and absences. Dover Decl. ¶ 10; Pl's Dep. 35-36. During the subsequent 90-day probationary period, Plaintiff's absenteeism continued. In August and September 2007, Plaintiff had physical therapy treatment for back pain related to his automobile accident on an almost daily basis. Pl's Dep. 64. Plaintiff initially scheduled his physical therapy appointments for 1 p.m., one of the busiest parts of the workday for mixer truck drivers. Pl's Dep. 63; Dover Dec. ¶ 11. After his supervisors informed Plaintiff that the time of his physical therapy appointments interfered with his ability to make delivery runs, Plaintiff changed the time of his physical therapy to 4 p.m. Pl's Dep. 48. At the end of this second probationary period at the beginning of October 2007, Plaintiff's supervisors gave him low marks for availability and dependability. Dover Decl. ¶ 12 [DE-17-4-13]. Specifically, Plaintiff's supervisors told Plaintiff that he had "too many personal issues taking [him] away from daily bus[iness] with [Ready Mixed]" and warned Plaintiff that "if he continue[d] to need so much time off, [Ready Mixed would] terminate him." Dover Decl. [DE-17-4-13,14]. Nonetheless, at the end of this period, Ready Mixed permitted Plaintiff to continue working and provided him the standard raise given to employees at the end of their probationary period. Dover Decl. ¶ 13 [DE 17-4-16].

Plaintiff's absenteeism subsided in October 2007 after he received his performance evaluation but began again at the end of January 2008. Between January 24, 2008, and February 15, 2008, Plaintiff's attendance records and time cards show that he failed to report for work as scheduled on at least ten different days. Dover Decl. Ex. E. Included among these absences were five unexcused absences and five excused absences. Dover Decl. ¶ 14, Ex. E. [DE 17-4-

18]. After incurring these ten days of absences, Plaintiff again failed to report to work on February 18, 2008, but called Dover to let him know that he could not come back because of back pain. Dover Decl. ¶ 15. Dover requested that Plaintiff provide doctors' notes for his unexcused absences. Id. Plaintiff provided a doctor's note covering absences between January 24 and January 30, 2008, but failed to produce a doctor's for five days he was absent between February 11 and February 15, 2008. Id.

On March 5, 2008, Ready Mixed terminated Plaintiff's employment. Dover Decl. ¶ 16, Ex. F; Pl's Dep. Ex. 23 [DE 17-4-22,23; 17-3-10].

## DISCUSSION

First, the Court must address Plaintiff's pending motion to compel the production of certain documents. On May 3, 2010, Douglas filed a motion requesting a "Copy of the Employee Attendance Record for the year 2008" in addition to a "Copy of the driver's delivery runs." [DE 14]. The Court has reviewed the record and determined that the Defendant has provided the Plaintiff with the substance of the requested documents. Accordingly, Plaintiff's motion to compel is DENIED.

A. STANDARD OF REVIEW

The Court turns next to consideration of Defendant's motion for summary judgment as to all of Plaintiff's claims. Summary judgment is appropriate when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. See Anderson v. Liberty Lobby, 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The party seeking summary judgment bears the burden initially of coming forward and demonstrating the absence of a genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). When making the summary judgment determination, the facts and

all reasonable inferences must be viewed in the light most favorable to the non-movant. Liberty Lobby, 477 U.S. at 255, 106 S.Ct. 2505. Once the moving party has met its burden, the non-moving party then must come forward and demonstrate that such a fact issue does indeed exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Summary judgment is appropriate against a party who fails to make a showing sufficient to establish any one of the essential elements of the party's claim on which he will bear the burden of proof at trial. See Celotex, 477 U.S. at 322-23, 106 S.Ct. 2548.

B. ADA CLAIMS

It is not entirely clear whether Douglas is asserting a wrongful discharge claim, a hostile work environment claim, or both. For purposes of completeness, the Court has considered both types of ADA claims and concludes that Plaintiff cannot establish the elements of a prima face case under either theory.

1. Wrongful Discharge

To make out a prima facie case of wrongful discharge under the ADA, Douglas must show that: (1) he is within the ADA's protected class; (2) he was discharged; (3) at the time of his discharge, he was performing the job at a level that met his employer's legitimate expectations; and (4) his discharge occurred under circumstances that raise a reasonable inference of unlawful discrimination. E.g. Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, 53 F.3d 55, 58 (4th Cir.1995). One is within the ADA's protected class if one is a qualified individual with a disability. 42 U.S.C.A. § 12112. The ADA defines "disability" as a physical or mental impairment that substantially limits one or more of the major life activities of an individual, a record of such an impairment, or being regarded as having such an impairment. 42 U.S.C.A. § 12102(2).

Here, the record evidence establishes that Douglas does not suffer from a "disability" as

defined in Section 12102. Although Douglas apparently incurred some form of back injury following his May 24, 2007 automobile accident, there is no evidence that this impairment places Douglas in the class of protected individuals under the ADA. Douglas has failed to show that either his back injury or any other alleged impairment impairment interfered with a major life activity—such as working—to a considerable or high degree. To the contrary, the evidence tends to show that Douglas never was affected by an impairment during his tenure as an employee at Ready Mixed. Even when he was taking time off from work for treatment of his injury during 2007, Plaintiff continued to work as a mixer truck driver throughout the year. Dover Decl. [DE 17-4-11]. Prior to and between the periods of excused and unexcused absences in January and February 2008, Plaintiff worked at least three weeks as a mixer truck driver. Dover Decl. [DE 17-4-18,19]. Plaintiff testified during his deposition that while driving a truck sometimes caused him pain, he was always able to perform his job duties and did not recall receiving any work restrictions from his doctors or requesting any work restrictions from his supervisors at Ready Mixed. Pl's Dep. 44-47, 85-86, 95, 105-06. When Plaintiff was queried at his deposition as to any physical limitations that may have existed at the time he started working for Ready Mixed, the following exchange ensued:

> Q. At the time you were hired by Ready Mixed in 2007 did you have any other physical limitations?
> A. No. It was just like lifting over 50 pounds, I think, with my left arm, that was it.
> Q. Due to the pin in your shoulder?
> A. Yes. That was the only restriction I had.
> Q. Were there any limitations on the duties of a mixer driver?
> A. <u>None</u>. <u>None</u>.
> Q. Any dis–did you have any discussion with Mr. Dover at that time about your shoulder or any other physical limitations that you had?
> A. No.

Id. at 23 [DE 17-2-7] (emphasis added).

Based on these undisputed facts, Plaintiff's <u>prima facie</u> case fails because his alleged

impairment or impairments do not rise to the level of a "disability" under the ADA. Therefore, Douglas is not "within the ADA's protected class" as required to state a claim for wrongful discharge. See 53 F.3d at 58. Accord Pollard, 281 F.3d at 469 (finding that plaintiff who had to undergo surgery and take a nine month leave of absence from her job due to a back injury did not have a "permanent or long-term impairment that significantly restricted a major life activity."); Standard v. A.B.E.L. Services, Inc., 161 F.3d 1318, 1327 (11th Cir. 1998) (finding employee failed to show that his back injury significantly restricted his ability to work and the employee admitted that he was fully capable of performing the job at all times that he was employed); Heintzelman v. Runyon, 120 F.3d 143, 144-45 (8th Cir. 1997) (holding plaintiff failed to demonstrate that she was substantially limited in the major life activity of working even though she "performed only light duty, worked reduced hours or was off work altogether" for more than a year after suffering an on-the-job back injury). Accordingly, there is no genuine issue of material fact with respect to Plaintiff's purported claim for wrongful discharge and Ready Mixed is entitled to summary judgment as a matter of law.

    2.    <u>Hostile Work Environment</u>

In light of Plaintiff's generalized allegation of "employment discrimination," the Court also considers the propriety of a hostile work environment claim. To state a hostile work environment claim under the ADA, a Plaintiff must show: (1) he is a qualified individual with a disability; (2) he was subjected to unwelcome harassment; (3) the harassment was based on his disability; (4) the harassment was sufficiently severe or pervasive to alter a term, condition, or privilege of employment; and (5) some factual basis exists to impute liability for the harassment to the employer. Fox v. General Motors Corp. 247 F.3d 169, 177 (4th Cir. 2001).

As established, supra, Plaintiff has not forecast sufficient evidence at this stage of the

proceeding indicating that he is "a qualified individual with a disability." Accordingly, for the same reasons that he cannot establish a prima facie case for wrongful discharge, Plaintiff has not established sufficient evidence at this stage of the proceeding of a hostile work environment claim under the ADA. See Rohan v. Networks Presentations LLC, 375 F.3d 266, 272 (4th Cir. 2001).

Finally, even assuming, *arguendo*, that the Plaintiff suffers from a "disability" for purposes of an ADA claim–under either a "wrongful discharge" or "hostile work environment theory–there is absolutely no evidence at all establishing that any of the alleged misdeeds of Ready Mixed were taken because of Plaintiff's alleged disability. Proving this nexus between an alleged disability and the alleged discrimination of an employer is an essential element of an ADA claim. Wilson v. Maryland-Nat'l Capital Park and Planning Comm'n, No. 98-1650, 1999 WL 279878, at *4 (4th Cir. May 6, 1999). Here, there absolutely no evidence tying the Plaintiff's alleged disability to Ready Mixed's alleged actions. More importantly, however, the Plaintiff seems to acknowledge that no such connection exists. In a document entitled "Plaintiff's Motion In Opposition to Defendant's Further Support of its Motion for Summary Judement [sic]" [DE-26], filed September 27, 2010, the Plaintiff states: "My charge in this case has nothing to do with my disabilities." Id.

It would appear that Plaintiff has a generalized grievance with the administration at Ready Mixed, and that he has attempted to present that grievance in the context of an ADA action. But without establishing the bare minimum of a prima facie case, Plaintiff's claims purporting to arise under the ADA fail as a matter of law.

## CONCLUSION

For the aforementioned reasons, Plaintiff's Motion to Compel is DENIED, Defendant's

Motion for Summary Judgment is GRANTED and Plaintiff's claims are DISMISSED in their entirety.

SO ORDERED.

This the 29 day of October, 2010.

TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE